STATE OF NORTH CAROLINA v. ANTOINE DONYELL MELTON

No. COA05-108

(Filed 7 February 2006)

## 1. Evidence— hearsay—business records exception—laboratory report

The trial court did not commit plain error in a first-degree rape of a child under the age of thirteen case by allowing the State to introduce as substantive evidence the results of a laboratory report without presenting the maker of the report for cross-examination and confrontation where the laboratory report confirmed that defendant tested positive for genital herpes and the child had also tested positive for genital herpes because the testimony concerning the laboratory report fell within the business records exception under N.C.G.S. § 8C-1, Rule 803(6) since, although the test was performed after defendant had been arrested, it was performed before defendant was indicted, and there was no evidence that anyone at the laboratory either had

any knowledge about the criminal prosecution or had any motive to distort the results of the laboratory report.

**2. Constitutional Law— right of confrontation—testimonial laboratory report—harmless error**

Even if admission of a laboratory report confirming that defendant tested positive for genital herpes constituted testimonial evidence that violated defendant's right of confrontation under *Crawford v. Washington*, 541 U.S. —— (2004), in a prosecution for first-degree rape of a child, this error was harmless beyond a reasonable doubt in light of the overwhelming evidence of defendant's guilt.

Appeal by defendant from judgment dated 5 August 2004 by Judge Milton F. Fitch, Jr. in Superior Court, Wilson County. Heard in the Court of Appeals 1 November 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Margaret A. Force, for the State.*

*Miles & Montgomery, by Lisa Miles, for defendant-appellant.*

McGEE, Judge.

Antoine Donyell Melton (defendant) was convicted of first-degree rape of a child (the child) under the age of thirteen. The trial court sentenced defendant to 192 months to 240 months in prison. Defendant appeals.

[1] Defendant's issues on appeal do not require a statement of the facts for an understanding of our Court's determination of those issues. Defendant argues "the trial court committed plain error [by] allowing the State to introduce as substantive evidence the results of a laboratory report without presenting the maker of the report for cross-examination and confrontation." The laboratory report confirmed that defendant tested positive for genital herpes and was relevant because the child had also tested positive for genital herpes. Defendant argues the report contained inadmissible hearsay and that its introduction into evidence violated defendant's Sixth Amendment right of confrontation under *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004).

Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence

to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2005). Hearsay evidence is inadmissible at trial unless an exception to the hearsay rule applies. N.C. Gen. Stat. § 8C-1, Rule 802 (2005). The State contends the laboratory report falls within the business records exception to the hearsay rule. The following documents fall within the business records exception:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

N.C. Gen. Stat. § 8C-1, Rule 803(6) (2005).

In *State v. Deanes*, 323 N.C. 508, 374 S.E.2d 249 (1988), *cert. denied*, 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989), our Supreme Court discussed the requirements for introduction of laboratory reports under the business records exception:

> "In instances where hospital records are legally admissible in evidence, proper foundation must, of course, be laid for their introduction. The hospital librarian or custodian of the record or other qualified witness must testify to the identity and authenticity of the record and the mode of its preparation, and show that the entries were made at or near to the time of the act, condition or event recorded, that they were made by persons having knowledge of the data set forth, and that they were made *ante litem motam*."

*Id.* at 526-27, 374 S.E.2d at 261 (quoting *Sims v. Insurance Co.*, 257 N.C. 32, 35, 125 S.E.2d 326, 329 (1962)). The Court emphasized the importance of the *ante litem motam* requirement, and quoted Black's Law Dictionary's definition of *ante litem motam* as follows: " 'At [a] time when declarant had no motive to distort [the] truth[,]' " and " '[b]efore suit brought, before controversy instituted. Also before the

controversy arose.' " *Deanes*, 323 N.C. at 527, 374 S.E.2d at 261 (quoting Black's Law Dictionary (5th ed. 1979)).

In *Deanes*, the defendant was charged with first-degree rape of a five-year-old girl. *Deanes* at 510, 374 S.E.2d at 252. Subsequently, a doctor who examined the girl took a sample of the girl's vaginal discharge and sent it to a private laboratory for analysis. *Id.* at 514, 374 S.E.2d at 254. The Court summarized the laboratory manager's trial testimony as follows:

> He identified the original computer worksheet, and a copy documenting the work performed on the child's specimen. The copy was introduced in evidence. [He] testified further that the test was done in the regular course of business using standard procedures and that the information was recorded promptly using standard procedures. [He] testified further that he had not known until he was called to testify that morning that there was any legal involvement with the case. [He] summarized the procedures used in the lab to confirm that the culture from the child's specimen tested positive for gonorrhea.

*Id.* The State also introduced evidence that the defendant had tested positive for gonorrhea. *Id.* The defendant was convicted of first-degree rape. *Id.* at 510, 374 S.E.2d at 252.

On appeal to our Supreme Court, the defendant argued the laboratory report was inadmissible hearsay not within the business records exception because it had not been prepared *ante litem motam. Id.* at 526, 374 S.E.2d at 261. The Court noted the laboratory manager was a qualified witness who identified the laboratory report documenting the work performed on the girl's specimen. *Id.* at 527, 374 S.E.2d at 261. The Court also noted the laboratory manager's testimony that a medical technologist had performed the test within the regular course of business shortly after the laboratory received the specimen. *Id.* at 527, 374 S.E.2d at 261-62.

The Court recognized that the test was performed after the defendant had been arrested and charged with the rape of the girl. *Id.* at 527, 374 S.E.2d at 262. However, the Court noted there was no evidence that anyone at the laboratory either had any knowledge about the criminal prosecution or had any motive to distort the results of the laboratory report. In fact, the laboratory manager testified he did not know about the defendant's criminal prosecution until the morning he was called to testify concerning the laboratory report. *Id.*

Therefore, the Court concluded the testimony concerning the laboratory report fell within the business records exception. *Id.* at 527, 374 S.E.2d at 261.

The testimony of the laboratory manager for Laboratory Corporation of American (Lab Corp) in Burlington, North Carolina, regarding the laboratory report in the case before us, was likewise admissible under the business records exception. As in *Deanes*, the laboratory manager in the present case was a qualified witness to testify regarding the laboratory report. He identified the laboratory report as a "regular Lab Corp report" which documented the results of the tests performed on defendant's blood. Also, the laboratory report was prepared within several days after the laboratory received defendant's blood sample.

As in *Deanes*, Lab Corp conducted the tests on defendant's blood sample after defendant's arrest on or about 22 May 2003. However, defendant was not indicted for the first-degree rape of the child until 12 January 2004. Also, as in *Deanes*, there was no evidence in the present case to suggest that anyone at Lab Corp had a motive to distort the results of the tests. Moreover, there was no evidence that anyone at Lab Corp even knew about defendant's criminal prosecution. In fact, it appears the hospital, not the Wilson County Sheriff's office, ordered the tests from Lab Corp because the nurse for the Wilson County Sheriff's office testified that she sent defendant's blood sample to the hospital. Under the test set forth in *Deanes*, the laboratory report at issue in the present case qualified as a business record.

[2] Defendant argues that even if the laboratory report fell within the business records exception, its introduction violated defendant's right to confront the witnesses against him pursuant to *Crawford v. Washington*. In *Crawford*, the Supreme Court held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68, 158 L. Ed. 2d 177, 203 (2004). However, the Court also held that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law[.]" *Id.* The Supreme Court did not provide a comprehensive definition of "testimonial" evidence. *Id.*

We note that the Supreme Court in *Crawford* indicated that business records are nontestimonial "by their nature." *Id.* at 56, 158

L. Ed. 2d at 195-96; *see also, State v. Windley,* 173 N.C. App. 187, 193-94, 617 S.E.2d 682, 686 (2005) (recognizing the Supreme Court's indication that business records are nontestimonial). However, in a recent decision, our Court held that laboratory reports may be testimonial under certain circumstances. *State v. Huu The Cao,* 175 N.C. App. 434, 440, 626 S.E.2d 301, 305 (2006). We must therefore determine if the laboratory report at issue in the present case is testimonial or nontestimonial pursuant to the test set forth in *Cao.*

In *Cao,* the defendant was convicted of two counts of selling cocaine and two counts of possession with intent to sell or deliver cocaine. *Id.* at 436, 626 S.E.2d at 302. At trial, the State presented evidence that the defendant had sold crack cocaine to an undercover police officer on two occasions. *Id.* at 435, 626 S.E.2d at 302. After each transaction, the police officer "placed the crack cocaine he received from [the] [d]efendant in an evidence envelope, sealed it, turned it over to property control, and requested that the substances be tested for the presence of cocaine." *Id.* at 435-36, 626 S.E.2d at 302. The laboratory technician who conducted the tests on the substances did not testify at trial. Rather, the police officer read to the jury the contents of the laboratory reports, which confirmed that the substances contained crack cocaine. *Id.* at 436, 626 S.E.2d at 302. On appeal, the defendant argued that pursuant to *Crawford,* the trial court committed plain error by allowing the officer to testify regarding the contents of the laboratory reports without the laboratory technician being available for cross-examination. *Id.* at 436, 626 S.E.2d at 302-03.

In *Cao,* we held:

> [L]aboratory reports or notes of a laboratory technician prepared for use in a criminal prosecution are nontestimonial business records only when the testing is mechanical, as with the Breathalyzer test, and the information contained in the documents are objective facts not involving opinions or conclusions drawn by the analyst.

*Id.* at 440, 626 S.E.2d at 305. Upon application of this rule to the facts in *Cao,* our Court concluded that, although "the laboratory reports' specification of the weight of the substances at issue would likely qualify as an objective fact obtained through a mechanical means[,]" the record did not contain enough information about the procedures

used to identify the presence of cocaine to allow the Court to determine whether that portion of the procedure met the test. *Id.* at 440, 626 S.E.2d at 305. However, we held that, even assuming the introduction of the laboratory reports was error, it was harmless beyond a reasonable doubt. *Id.* at 440-41, 626 S.E.2d at 305.

In the present case, the record also does not contain sufficient information to enable this Court to determine whether the procedures employed by Lab Corp were mechanical. However, as in *Cao*, even assuming the admission of the laboratory report was error, we conclude the error was harmless beyond a reasonable doubt. Where a trial court's error amounts to constitutional error, the State bears the burden on appeal to show the error was harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2005); *State v. Garcia*, 174 N.C. App. 498, 504, 621 S.E.2d 292, 297 (2005). The State may meet its burden by showing there was overwhelming evidence of a defendant's guilt. *Garcia*, 174 N.C. App. at 504, 621 S.E.2d at 297.

In the present case, the child testified about the rape and identified defendant as her attacker. Testimony of both a medical doctor, who conducted a physical examination of the child, and a child protective services worker, who met with the child, corroborated the child's testimony regarding defendant's rape of the child.

The child's mother also provided independent evidence that defendant had genital herpes. The child's mother further testified that when she accused defendant of raping the child and asked defendant why he had done it, defendant responded: "Babe, I don't know. I don't know why I did it." Because there was overwhelming evidence of defendant's guilt, the trial court did not commit plain error by failing to act on its own to exclude the testimony regarding the laboratory report.

No error.

Judges WYNN and GEER concur.